UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:15CV-00089-HBB

**SANDRA L. WILLIS**                                                                                  **PLAINTIFF**

**VS.**

**CAROLYN W. COLVIN, Acting
Commissioner of Social Security**                                                  **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

The Commissioner of Social Security denied Sandra L. Willis's ("Willis") applications for disability insurance benefits and supplemental security income benefits. Willis seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). Both Willis (DN 16-1) and the Commissioner (DN 21) have filed a Fact and Law Summary. After seeking permission from the Court, Willis filed a reply brief (DN 24). Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 13).

## FINDINGS OF FACT

Willis is almost 50 years old, lives alone in Sacramento, Kentucky, and has less than a high school education[1] (Tr. 52). Willis has three daughters who also live in Sacramento and take her to the doctor, help her with housekeeping, and go shopping for her (Tr. 61). She testified that she can drive about ten miles around town, wash a load of clothes, make a sandwich, and take a shower on her own (Tr. 58, 61, 65). Previously, Willis worked as a grill cook at the Blue Jay Café from January 2006 to July 2007 (Tr. 53, 272).

Willis applied for disability insurance benefits ("DIB") under Title II and supplemental security income benefits ("SSI") under Title XVI, claiming that she became disabled on December 31, 2008, as result of ruptured neck discs S1-S2, arthritis in neck, COPD, asthma, anxiety, and depression (Tr. 50-51, 270-71). Her applications were denied initially and again on reconsideration (Tr. 91-98, 112-20). Administrative Law Judge Marci P. Eaton ("ALJ") conducted a video hearing in Paducah, Kentucky, on August 21, 2013 (Tr. 45). Willis appeared by video from Owensboro, Kentucky, and was represented by counsel (Tr. 44-46). Robert Paul, a psychological expert, and Kenneth Boaz, a vocational expert also testified at the hearing (Tr. 46). The ALJ issued an unfavorable decision on January 29, 2014 (Tr. 38).

The ALJ applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R § 404.1520; Kyle v. Comm'r of Soc. Sec., 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Willis has not engaged in substantial gainful activity since her alleged onset date (Tr. 23). Second, Willis has the following severe impairments: "chronic

---

1 Willis's level of education is unclear from the record. At the administrative hearing, she testified that the highest level of education she completed was through eighth grade (Tr. 52-53). Yet she wrote on her disability report that tenth grade was the highest level of education she completed and reported the same to Wayne Fuller during a psychological examination (Tr. 272, 723).

2

obstructive pulmonary disease, degenerative disc disease of the lumbar and cervical spine, right-sided carpal tunnel syndrome, a right shoulder disorder, borderline intellectual functioning, a major depressive disorder, and a history of substance abuse" (Id.). Third, none of Willis's impairments or combination of impairments meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Tr. 24). Fourth, Willis has the residual functional capacity ("RFC") to perform "medium work" with the following limitations:

> She should only occasionally reach, handle, finger, and feel with the right upper extremity. She can occasionally lift and carry 50 pounds occasionally and 20 pounds frequently. She can sit for six hours in an eight-hour workday and stand and/or walk six hours in an eight-hour workday. She can frequently climb stairs and ramps, balance, stoop, kneel, crouch, and crawl. She needs to avoid noxious fumes, odors, gases, dust, and poor ventilation. She can understand, remember, and carry out one to three step instructions. She can make simple work-related judgments. She interact [sic] frequently with co-workers and supervisors, and occasionally with the public in a thing-oriented work environment. She can respond appropriately to work pressures in a usual work setting. She can respond appropriately to infrequent and gradual changes in a routine work setting.

(Tr. 25). Additionally, Willis is unable to perform any of her past relevant work (Tr. 37). Fifth and finally, considering Willis's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform (Id.).

Willis appealed the ALJ's decision (Tr. 14-15). The Appeals Council declined review (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Willis appealed to this Court (DN 1).

CONCLUSIONS OF LAW

### A. Standard of Review

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching her conclusion. See Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993).

### B. Finding No. 4

Willis argues the ALJ failed to evaluate whether her intellectual disability met or equaled the requirements of Listing 12.05(C) (DN 16-1, at p. 3). She explains that the record evidence demonstrates she meets all three requirements of the listing (Id.). In opposition, the Commissioner contends that the ALJ's decision discusses several reasons that support Willis not having an intellectual disability but, rather, borderline intellectual functioning (DN 21, at p. 8, 18). The Commissioner emphasizes that the location of the ALJ's explanation regarding Willis's intellectual functioning is not determinative. As to Willis's claim that the ALJ failed to assess whether her impairments "equaled" the requirements of Listing 12.05, the Commissioner points out that the ALJ credited Dr. Paul's testimony, which considered Willis's impairments singly and

4

in combination and "demonstrated he had the possibility of medical equivalence in mind" (Id. at p. 20). In her reply, Willis describes the Commissioner's argument as assuming that claimants diagnosed with borderline intellectual functioning should be categorically excluded from evaluation under Listing 12.05(C) (DN 24, at p. 3). Willis believes this argument is based on a fallacy and requires remand (Id.).

### 1. The Requirements of 12.05(C)

In this case, the ALJ's decision does not mention Listing 12.05(C), which covers the mental disorder of "intellectual disability." *See* 20 C.F.R. Pt. 404, App. 1, §§ 12.00, 12.05(C). Listing 12.05(C) has two parts. The first part, referred to as the "diagnostic definition," requires (1) significantly sub-average general intellectual functioning; (2) deficits in adaptive functioning; and (3) onset before age twenty-two. Id. The second part, referred to as the "severity criteria" of Subsection (C) requires (1) a valid verbal, performance, or full scale IQ of 60 through 70; and (2) a physical or mental impairment imposing an additional and significant work-related limitation or function. Id.; Smith-Johnson v. Comm'r or Soc. Sec., 579 F. App'x 426, 432 (6th Cir. 2014). To meet a listing in Appendix 1, the medical records regarding the impairment must satisfy both the diagnosis and severity requirements for the listing. Social Security Ruling 96-5p; 20 C.F.R. §§ 404.1525(d), 416.925(d); Hale v. Sec'y of Health & Human Servs., 816 F.2d 1078, 1083 (6th Cir. 1984).

The Listings contain over a hundred conditions "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925(a). The Social Security regulations require an Administrative Law Judge to find a claimant disabled if she meets a listing, but neither the regulations nor the Sixth Circuit require the Administrative Law Judge to address or discuss every listing. Sheeks v. Comm'r of

5

Soc. Sec., 544 F. App'x 639, 641 (6th Cir. 2013). In fact, the Administrative Law Judge need not discuss listings that an applicant clearly does not meet. If the record, however, "'raises a substantial question as to whether the claimant could qualify as disabled' under a listing, the ALJ should discuss that listing." Id. (quoting Abbott v. Sullivan, 905 F.2d 918, 925 (6th Cir. 1990)). Absent such a "substantial question," as to every requirement of the listing, an Administrative Law Judge does not commit reversible error by failing to evaluate a listing at step three. Id.

As an initial matter, Willis submits evidence that clearly establishes the "severity criteria." She points to Dr. Wayne Fuller's examination from January 30, 2007, which revealed a verbal IQ score of 69 (DN 16-1, at p. 7 (citing Tr. 723)). Although there is some question as to whether her low verbal IQ score could be the result of her six years of methamphetamine use (Tr. 725), the undersigned finds the score sufficient to meet the valid IQ score requirement. Along with the required IQ threshold, Willis points to evidence indicating she suffers "a physical or mental impairment imposing an additional and significant work-related limitation or function." 20 C.F.R. Pt. 404, App. 1, § 12.05(C). Willis refers to the ALJ's determination at Finding No. 3 that she suffers from numerous severe impairments[2] (DN 16-1, at p. 8). Again, the undersigned finds this evidence sufficient to raise a substantial question as to whether she meets the second severity requirement of Listing 12.05(C).

---

2 Confusingly, Plaintiff states that "[t]he ALJ found that Ms. Henderson's medically determinable impairments of carpal tunnel syndrome, degenerative disc disease, obesity, major depressive disorder, and pain disorder were 'severe impairments' within the meaning of the Act and regulations" (DN 16-1, at p. 8). First, it is unclear why Plaintiff mentions "Ms. Henderson." Second, the severe impairments listed by Plaintiff are similar to those in the ALJ's decision, however, the ALJ did not find Willis had "obesity" or a "pain disorder." The ALJ, in fact, found Willis has the severe impairments of "chronic obstructive pulmonary disease, degenerative disc disease of the lumbar and cervical spine, right-sided carpal tunnel syndrome, a right shoulder disorder, borderline intellectual functioning, a major depressive disorder, and an anxiety disorder, and a history of substance abuse" (Tr. 23). Although Plaintiff erred in recounting the severe impairments identified by the ALJ, the undersigned finds her argument is still sufficient to raise a substantial question as to whether she meets the second severity requirement in Listing 12.05(C).

Even though Willis raises a "substantial question" as to both of the severity requirements from paragraph C, she must also demonstrate her impairment satisfies the diagnostic criteria. *See* Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001). As mentioned above, the diagnostic criteria for Listing 12.05 requires the claimant establish "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."[3] 20 C.F.R. Pt. 404, App. 1, § 12.05.

Rather than simply pointing to evidence proving she meets the diagnostic criteria of Listing 12.05, Willis challenges the ALJ's failure to impose a particular definition for evaluating adaptive deficits, which she claims prevents the court from conducting meaningful judicial review (DN 16-1, at pp. 10-11). The Commissioner argues that the term "deficits in adaptive functioning" has a commonly understood core meaning, which involves "how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural group, and community setting . . . " (DN 21, at p. 15).

The Sixth Circuit has described "deficits in adaptive functioning" as follows:

> The adaptive skills prong evaluates a claimant's effectiveness in areas such as social skills, communication skills, and daily-living skills. Heller v. Doe, 599 U.S. 312, 329, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 28-29 (3d rev. ed. 1987)

---

[3] The phrasing of the diagnostic description is somewhat ambiguous, in that it "could be read to require both intellectual deficits and adaptive deficits have manifested before age 22, or it could be read to require only that adaptive deficits have manifested before age 22." McClellan v. Astrue, 804 F. Supp. 2d 678, 692 n.9 (E.D. Tenn. 2011). The subsequent clause appears to restate and clarify the matter: "i.e., the evidence demonstrates or supports onset of *the* impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Listing 12.05 (emphasis added). As such, one court within the Sixth Circuit has found intellectual disability to be a single impairment marked by "two types of deficits—intellectual and adaptive—both of which must be present by age 22." McClellan, 804 F. Supp. 2d at n.9.

> ("DSM-III")). To determine the definition of [intellectual disability] under the SSA, it is appropriate to consult leading professional organizations' definitions. *See* 67 Fed.Reg. 20022 (2002). The American Psychiatric Association defines adaptive-skills limitations as "[c]oncurrent deficits or impairments . . . in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, work, leisure, health, and safety." DSM-IV-TR at 49.

Hayes v. Comm'r of Soc. Sec., 357 F. App'x 672, 677 (6th Cir. 2009). Accordingly, the Sixth Circuit does not require the ALJ to explicitly state a particular standard for evaluating the adaptive deficits requirement, and the undersigned finds no merit in this argument.

As for proving she meets the deficits in adaptive functioning manifested before age 22 requirement, Willis cites to reports from William Fuller, M.A., Dr. Elizabeth Brown, and Dr. Robert Paul (DN 16-1, at pp. 14-17). She claims these reports refute the ALJ's conclusion that she "is able to live alone, pay bills, manage money, drive, read, and write" (Id. (citing Tr. 33)). Willis proffered the following evidence to establish this requirement.

Dr. Fuller performed a psychological evaluation on January 30, 2007, and indicated that Willis's WIAT-II test results suggest that she has "significant educational deficits," including poor responses to basic knowledge and math questions (Tr. 724-25). Dr. Fuller also suspected cognitive deficits resulting from her prior history of methamphetamine abuse, which has caused her to become forgetful, and unable to retain information (Tr. 725). With respect to her personality, Dr. Fuller reported Willis would have difficulty working with others, would be unwilling to ask for help, and might be taken advantage of because she doesn't consider the motivations of others (Id.).

Dr. Brown completed a medical opinion questionnaire on June 3, 2012 (Tr. 610-612). For many categories of mental abilities listed, Dr. Brown checked the box for "poor or none,"

8

indicating Willis has "no useful ability to function in this area." (Tr. 610). These categories include her ability to: interact appropriately with the general public, maintain socially appropriate behavior, travel in unfamiliar places, carry out very short and simple instructions, deal with normal work stress, etc. (Tr. 610-11).

On August 21, 2013, Dr. Paul completed a Medical Source Statement, opining that Willis's mood/anxiety symptoms and subaverage intellectual functioning limit her ability to complete simple and/or low level detailed tasks effectively and reliably (Tr. 634). Dr. Paul also assessed that Willis has moderate restriction in interacting appropriately with the public, responding appropriately to work pressures in a usual work setting, and responding appropriately to changes in a routine work setting (Tr. 635).

There is no doubt that based on these three reports, Willis has some deficits in adaptive functioning relating to her social, communication, and daily-living skills. Yet the glaring problem with the evidence from these three examiners is that nothing indicates Willis experienced onset of these deficits prior to age 22. In fact, Dr. Fuller indicates that her deficits may have arisen as a consequence of her six-year methamphetamine addiction, which began when she was 34-years-old. This further diminishes Willis's ability to meet the diagnostic criteria. *See* Peterson v. Comm'r of Soc. Sec., 552 F. App'x 533, 540 (6th Cir. 2014) (claimant was hamstrung by diagnosis of alcohol dependence and abuse suggesting that loss of adaptive functioning occurred after developmental phase). Because Willis fails to point to any evidence that her adaptive deficits manifested before age 22, she has failed to raise a substantial question as to whether she can meet the diagnostic criteria of Listing 12.05. The ALJ, therefore, did not commit reversible error in not discussing Listing 12.05(C).

## 2. Harmless Error

Even if the ALJ should have explicitly mentioned Listing 12.05(C) in her decision, any failure to do so was harmless because the ALJ considered evidence relevant to a Listing 12.05(C) determination throughout her decision. An ALJ, "without explicitly mentioning a particular listing, may nonetheless make findings sufficient to determine whether the listing is met." McClellan v. Astrue, 804 F. Supp. 2d 678, 693 (E.D. Tenn. 2011). The Sixth Circuit has indicated that a court may search the ALJ's entire decision to determine whether the appropriate medical listings were considered. Bledsoe v. Barnhart, 165 F. App'x 408, 411 (6th Cir. 2006). Yet cases within the Sixth Circuit have distinguished that Bledsoe only applies when the Administrative Law Judge describes evidence pertaining to all impairments. *See* Snyder v. Comm'r of Soc. Sec., No. 5:13CV2360, 2014 WL 6687227, at *9 (N.D. Ohio, Nov. 26, 2014), Hunter v. Astrue, No. 1:09CV2790, 2011 WL 6440762, at *3 (N.D. Ohio Dec. 20, 2011) (finding Bledsoe was inapplicable where ALJ failed to evaluate medical evidence). Willis does not believe this harmless error analysis applies to her case because a search of the ALJ's decision still does not reveal scrutiny of Listing 12.05(C) (DN 16-1, at p. 5).

The undersigned has carefully reviewed the ALJ's entire decision, focusing on evidence of Willis's mental impairments. The ALJ recognized Willis's borderline intellectual functioning as a severe impairment supported by objective evidence in the record (Tr. 23, 33). The ALJ also evaluated Willis's impairments under Listings 12.02, 12.04, and 12.06, finding that she is only mildly restricted in activities of daily living, moderately restricted in social functioning, moderately restricted as to concentration, persistence, and pace, and experienced no episodes of decompensation for an extended duration (Tr. 24-25). In her RFC determination, the ALJ considered Willis's verbal IQ score of 69, her failed attempt to earn her GED, her reading

comprehension disorder, and her former methamphetamine dependence (Tr. 26). Of particular relevance, the ALJ noted Willis's statement that she made good grades and did not have difficulties in school (Id.). The ALJ also called attention to a psychological consultative exam from March 13, 2012, where Willis "denied special education placement in school" but noted she dropped out in the 10th grade (Tr. 28).

In addressing Ms. Brown's impairment questionnaire, which Willis relies heavily on, the ALJ pointed out blatant discrepancies, including Ms. Brown checking that Willis has a fair ability for understanding and remembering very short and simple instructions but a good ability to understand and remember detailed instructions (Tr. 30). Finally, the ALJ noted Willis's ability to "live alone, pay bills, manage money, drive, read, and write" and concluded that claims of neuropsychological difficulties are not supported by the medical record as a whole (Tr. 33).

After reviewing the ALJ's decision, the undersigned finds the ALJ adequately and thoroughly addressed Willis's mental impairments, including the requirements of 12.05(C). Thus, any error resulting from not specifically mentioning Listing 12.05(C) is harmless.

### 3. Borderline Intellectual Functioning

The Commissioner notes that Dr. Fuller and Dr. Paul both concluded that Willis functions in the "borderline range of intelligence," which is not the range associated with intellectual disability. (DN 21, at p. 6). An absence of a diagnosis of intellectual disability, argues the Commissioner, is probative for a Listing 12.05(C) determination (Id. (citing Peterson v. Comm'r of Soc. Sec., 522 F. App'x 533, 540 (6th Cir. 2014)). Later, the Commissioner states that "a finding of borderline intellectual functioning excludes a finding of intellectual disability" (Id. at p. 8 (citing Diagnostic and Statistical Manual of Mental Disorders 48, 740 (4th ed., text rev., 2000)).

11

Willis forcefully disagrees. In her reply, she argues that the "categorical exclusion" advocated by the Commissioner is unsupported (DN 24, at p. 3). She explains that just because every claimant diagnosed with intellectual disability plainly meets the requirements of Listing 12.05, it does not follow that every claimant diagnosed with borderline intellectual functioning does not (Id.).

The Sixth Circuit has indicated that a diagnosis of borderline intellectual functioning is one consideration in the Listing 12.05 analysis but is not a categorical exclusion. *See* West v. Comm'r of Soc. Sec., 240 F. App'x 692, 699 (6th Cir. 2007); Cooper v. Comm'r of Soc. Sec., 217 F. App'x 450, 452 (6th Cir. 2007). Here, the ALJ found that Willis has the severe impairment of borderline intellectual functioning (Tr. 23). Yet nowhere in the decision did the ALJ indicate that because of this borderline intellectual functioning diagnosis alone, Willis could not meet the "intellectual disability" requirements. Further, as outlined above, Willis has not proven "deficits in adaptive functioning" prior to age 22, which provides a basis, beyond the borderline intellectual functioning diagnosis, to find she cannot meet Listing 12.05(C).

### 4. Medical Equivalency

Finally, Willis argues the ALJ erred in not specifically considering whether her "intellectual disability could be said to 'equal' the requirements of Listing 12.05(C)" (DN 16-1, at p. 17). Willis believes that remand is required for the ALJ to reweigh the evidence and perform an "equals analysis" (Id.). The Commissioner counters that in finding Willis did not meet or medically equal any listing, the ALJ considered whether Willis's condition met Listing 12.05(C) (DN 21, at p. 20). The Commissioner explains that the ALJ credited Dr. Paul's consideration of Willis's impairments singly and in combination, which demonstrated Dr. Paul had the possibility of medical equivalence in mind during his evaluation (Id.).

According to the regulations, a claimant's condition is medically equivalent to a condition described in one of the listed impairments if "the medical findings are at least equal in severity and duration to the listed findings." 20 C.F.R. § 404.1526(b). To prove this, a claimant must demonstrate "medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Foster v. Halter, 279 F.3d 348, 355 (6th Cir. 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 531, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990)). Again, Willis has presented no medical findings showing "deficits in adaptive functioning" prior to age 22. Indeed, the three examinations Willis cites to indicate that she is of low intelligence, possibly from six years of methamphetamine use, but that she does not suffer "intellectual disability." Substantial evidence, thus, supports the ALJ's determination that none of Willis's impairments medically equal any listing, which implicitly rejects medical equivalency of Listing 12.05(C).

## ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Copies:  Counsel